UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| R.C. WEGMAN CONSTRUCTION CO.,<br><br>    Plaintiff,<br><br>    v.<br><br>ADMIRAL INSURANCE COMPANY, and<br>BRIAN BUDRIK,<br><br>    Defendants. | No. 08 C 6479<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

**I. BACKGROUND**

Defendant Admiral Insurance Company ("Admiral") seeks dismissal of a complaint by Plaintiff R.C. Wegman Construction Company ("Wegman") alleging a breach of duty of good faith for failing to notify Wegman that the liability limits of its policy might be insufficient to cover potential damages in a pending lawsuit, and failing to advise Wegman to seek independent legal counsel when such conditions arose. Wegman alleges that, had Admiral not breached this duty, it would have retained independent counsel and promptly notified its excess carrier of the potential for liability. Wegman claims that instead, since it was unaware of the possibility of an excess judgment until a few days before the trial began, it missed its opportunity to notify its excess carrier and thus was liable for the amount of the judgment exceeding its coverage under its policy with Admiral. For the following reasons, Admiral's motion to dismiss is granted.

**II. STANDARD OF REVIEW**

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Admiral's

motion to dismiss should be granted only if Wegman cannot prove any set of facts in support of its claim that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Furthermore, I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Wegman's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir. 2002). Stated another way, I should not grant Admiral's motion "unless no relief could be granted 'under any set of facts that could be proved consistent with the allegations.'" *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). That said, Wegman's "obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544 (2007).

### III. STATEMENT OF RELEVANT FACTS

In 2003, Brian Budrik sued Wegman alleging that he was injured in 2001 at a construction project at which Wegman served as the construction manager. At the time of the injury, Budrik was employed by Standard-Hayes Boiler & Tank, LLC. Wegman was named as an "additional insured" under the terms of a commercial general liability insurance policy issued by Admiral, with Standard-Hayes as the named insured. Liability coverage under the policy was limited to one million dollars for each occurrence. Wegman was also covered by an excess liability insurance policy issued by American International Specialty Lines Insurance Company ("American") which provided liability insurance coverage in the amount of ten million dollars in excess of the coverage provided under the terms of Admiral's policy.

Admiral selected and retained legal counsel to represent Wegman in the Budrik lawsuit. Wegman claims that Admiral learned no later than Budrik's deposition in May 2005 that there was a realistic probability that the award in the lawsuit would exceed the limits of Wegman's liability coverage. At the deposition, Admiral became aware of substantial losses sustained by Budrik as a result of his injuries, including considerable medical expenses, loss of income, and permanent physical disabilities. Wegman also states that in April 2007, Admiral knew that Budrik's demand for settlement was almost $6,000,000.00.

At no time did Admiral notify Wegman that there was a possibility that its liability coverage would be insufficient to cover the potential damages resulting from the lawsuit. Wegman claims that because of Admiral's failure to notify, it had no reason to believe that the possible judgment against it might be in excess of its primary insurer's coverage. It was only a few days prior to the start of the trial, Wegman claims, that it learned of the possibility of excess liability when a company executive had a chance conversation about the suit with a relative who happened to be a lawyer. It was this conversation that prompted Wegman to notify its excess insurance carrier about the lawsuit.

The Budrik suit proceeded to trial and a judgment was entered on the verdict against Wegman for $2,039,059.10, more than twice the limit of coverage under Admiral's policy. American refused to indemnify Wegman for the excess liability, contending that Wegman had failed to give timely notice of the potential for exposure.

Wegman claims that Admiral's failure to provide Wegman with notice of potential excess liability constitutes a breach of its obligation to deal with Wegman in good faith. Wegman claims that this breach was the direct and proximate cause of its damages, including the

depravation of opportunity to provide earlier notice to its excess carrier, deprivation of the excess insurance coverage and indemnification which would have been afforded by the excess carrier, exposure to liability in the amount of $1,039,059.10, and substantial attorneys' fees.

## IV. DISCUSSION

Wegman asserts that Admiral breached its duty of good faith and fair dealing by failing to notify Wegman of the possibility of an excess judgment and to recommend that Wegman seek independent counsel. The parties do not dispute that Illinois has not expressly recognized an insurance company's duty to notify an insured party of the possibility that a judgment could exceed the policy limits of the insured's protection or to recommend that an insured party consider retaining its own independent legal counsel when such occasion arises. However, Wegman claims specifically that Admiral's duty of good faith and fair dealing includes a duty to treat Wegman's interest equal to its own, which, under the circumstances, required Admiral to inform Wegman of the possibility of an excess judgment.

Although Illinois currently recognizes a duty of good faith and fair dealing in any case where recovery may exceed the policy limits of the insured's protection, this duty arises from the fiduciary relationship between the insurer and insured that is created when an insurance company obtains "the right to conduct the defense of litigation and of settlement negotiations." *Cernocky v. Indem. Ins. Co. N. Am.,* 216 N.E.2d 198, 204 (Ill. 1966). This is because when an insurance company manages its own risk by refusing to settle for an amount that it determines is too high considering the possibility of a trial award, it may risk the assets of the insured if there is the possibility of an excess judgment. *Transport Ins. Co., Inc. v. Post Express Co., Inc.*, 138 F.3d 1189, 1192 (7th Cir. 1998) ("Insurers operate under a conflict of interest; the policy limit drives a

4

wedge between what is good for insurers and what is good for clients."). Thus, the duty of good faith and fair dealing is expressed as the duty of the insurer to consider the interests of the insured at least equal to its own. *Id.* (*citing Adduci v. Vigilant Ins. Co.*, 424 N.E.2d 645, 648 (Ill. App. Ct. 1981)) ("An insurer must give 'its insured's interests at least equal consideration with its own when the insured is a defendant in a suit in which the recovery may exceed [the] policy limits.'").

Under Illinois law, this duty is breached when an insurance company declines to settle a claim within the limits of the insured's policy. *See, e.g. Parmelee Transp. Co. v. Am. Home Assurance Co.*, Nos. 89 C 2790, 89 C 2489, 89 C 3139, 1990 WL 17085 at *4 (N.D. Ill. Feb. 8, 1990) (recognizing that plaintiff stated a claim for the breach of the duty of an insurance company to consider its insured's interest at least equal to its own when insurance company declined the opportunity to settle a claim for $300,000 and when there was a possibility of recovery in excess of the $1,000,000 policy limit); *Cernocky,* 216 N.E.2d at 205 (finding the defendant insurer's refusal to respond to requests to enter into settlement negotiations, even after it was clear that claimants were willing to settle within the policy limits, indicated that the defendant did not give equal consideration to the plaintiffs' interest). Courts have also applied the duty with respect to aspects of settlement negotiations apart from a monetary award, such as whether to accept a general release from further action. *See Steele v. Harford Fire Ins. Co.*, 788 F.2d 441, 448 (7th Cir. 1986). Additionally, this district has recognized a breach of the duty of good faith and fair dealing for failure to consider the interest of an insured at least equal to its own when an insurer abandons a defense strategy developed by the insured's own lawyers and exposed it to liability exceeding the policy limit "leaving the insured helplessly vulnerable to a

5

judgment that . . . can (and does) reach massive proportions." *Home Ins. Co. v. Three I Truck Line*, 133 F. Supp. 2d 673, 675-76 (N.D. Ill. 1999).

It is this duty of good faith and fair dealing that Wegman seeks to extend to the situation in which the insurer fails to notify the insured about the possibility of an excess judgment.[1] While acknowledging that the affirmative duty to notify an insured of the possibility of an excess judgment has not been expressly established under Illinois law, Wegman claims that Admiral's failure to communicate the possibility of an excess judgment directly exposed Wegman to greater liability than the limits of its policy. This failure, Wegman asserts, is analogous to an insurer's failure to settle a claim within the policy limits. However, in those cases and the other cases which acknowledge the duty to consider the insured's interest at least equal to the insured's, the insurance companies' actions or omissions directly exposed the insured to the possibility of an excess judgment. In this case, the harm against which Wegman seeks protection is not the same harm contemplated in these "equal consideration" cases; Wegman does not claim that Admiral could have or should have acted to eliminate the possibility of an excess judgment. Wegman does not claim that Admiral's actions deprived it of the right to settle the case within policy limits or that Admiral's defense strategy exposed Wegman to an excess judgment. *See, e.g. Cernocky,* 216 N.E.2d 198; *Three I Truck Line*, 133 F. Supp. 2d 673. Instead, Wegman

---

[1] Wegman cites *Oda v. Highway Insurance Company*, 194 N.E.2d 489, 494 (Ill. App. 1963) in support of its claim that an insurer is required to advise the insured of the potential for an excess verdict. Although the insurer's attorney in *Oda* did advise the insureds accordingly, no such issue was involved in that case. There the court was concerned with a possible conflict of interest between two defendants and whether the insurer should have hired separate counsel to represent them. The court made no comment as to whether the insurer had a duty to advise the insured of the potential for excess liability or whether defendant's notification to the insured would have satisfied such a duty, had it existed.

6

maintains that Admiral's failure to notify it about the possibility of an excess judgment caused Wegman to not seek independent counsel and miss the opportunity to notify American of the possibility that its coverage might be at stake in the lawsuit. This cause of action is too attenuated to fit the courts' circumscribed application of the duty of good faith.

Furthermore, the duty of the insured to consider the interest of the insured at least equal to its own is rooted in the possibility that a conflict of interest may arise where the insured is a defendant in a suit in which potential recovery may exceed policy limits. "Where the insurer fails to settle a case within policy limits through fraud, negligence, or bad faith, this duty is breached." *Adduci*, 424 N.E.2d at 648. The insurer, by taking its chances at trial, subjects the insured to excess liability. In this case, Wegman does not allege that any conflict of interest arose during the course of the representation. Although Wegman, in support of its claim, points to *Parmelee Transp. Co. v. American Home Assur. Co.*, 1990 WL 17085, at *4 (N.D. Ill. Feb. 08, 1990) which acknowledged, as part of the duty of equal consideration, an insurer's duty to communicate the status of settlement negotiations, the negotiations at issue in *Parmelee* involved numerous settlement offers *within the insured's policy limits*. Wegman does not allege in its complaint the existence of any settlement offers within the policy limits, or even of any settlement negotiations at all beyond the $6,000,000.00 demand - six times the amount of the

policy limit.[2] Wegman makes no allegations of fact that demonstrate any conflict of interest between it and Admiral or any subjugation of its interests by Admiral.

Wegman cites no case law supporting the proposition that an insurer has an affirmative duty, outside of the context of settlement negotiations, to communicate information gleaned from a deposition. It is true that an attorney for the insured may be held to such a duty, since

> the attorney does represent the insured and assumes all of the duties imposed by the attorney-client relationship. . . Any attorney-client relationship includes the duty for the attorney to advise the client of progress in a case or controversy and this duty is not altered by the presence of a third-party insurer whom the lawyer also represents.

*Rogers v. Robson, Masters, Ryan, Brumund and Belom*, 392 N.E.2d 1365, 1375 (Ill. App. 1979), *aff'd*, 81 Ill. 2d 201, 407 N.E.2d 47 (1980). However,

> an insurance carrier is bound by its contractual obligations to furnish defense counsel and any actions beyond those contractual obligations would make the carrier guilty of unlawfully practicing law. . . Once the lawsuit is referred to legal counsel for defense, the carrier's participation in the defense of the claim is restricted to settlement negotiation. . . Any complaints the insured might have about the

---

[2] In Wegman's brief in opposition to Admiral's motion to dismiss, Wegman asks for leave to amend its plea to allege that Admiral breached its duty to consider Wegman's interest equal to its own in connection with settlement negotiations, including that Admiral failed to keep Wegman informed concerning settlement negotiations and failed to advise Wegman that it could contribute its own funds to any settlement. In this circuit, Wegman may not amend its complaint through arguments in its brief in opposition to a motion to dismiss. *See Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment"); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) (complaint may not be amended by the briefs in opposition to a motion to dismiss). Even were Wegman to amend its pleading, absent allegations that the parties might have settled within the policy limits, or any other facts that indicate that Admiral subjugated Wegman's interests to its own, it is unlikely that Wegman's complaint would survive a motion to dismiss.

conduct of the litigation itself must be directed to the attorneys themselves.[3]

*Brocato v. Prairie State Farmers Ins. Ass'n*, 520 N.E.2d 1200, 1203 (Ill. App. 1988) (citation omitted) (affirming dismissal of plaintiff's claims against insurer alleging negligence and misconduct by insurer's attorneys in the course of litigation). Because Admiral furnished Wegman with counsel, its role in the litigation was limited to settlement negotiation. In the absence of any allegations of settlement negotiation,[4] Admiral cannot be subject to a duty to communicate the status of such negotiations, let alone a duty to communicate information gleaned in a deposition. Therefore, I find that Wegman fails to state a claim upon which relief can be granted, because based upon the facts alleged, Wegman cannot establish that Admiral had a duty to inform it of the possibility of an excess judgment or to advise Wegman to seek independent counsel.

---

[3] Plaintiff cites *Westchester Fire Insurance Co. v. General Star Indemnity Co.*, 183 F.3d 578 (7th Cir. 1999) for the proposition that the attorneys Admiral retained to defend Wegman were Admiral's agents, and that any act or omission by the attorneys during the representation was legally the act or omission of Admiral. In *Westchester*, the Court of Appeals concluded that it was within the district court's discretion to give a jury instruction to the same effect. However, the issue in that case involved the insurer's liability for a failure to settle within the policy limits – a situation where the insurer's attorneys were acting as the insurer's agent, since the decision to settle is the insurers. This does not appear to be inconsistent with the court's apportionment of obligation in *Brocato*.

[4] Wegman does allege that Admiral was aware of a $6,000,000.00 settlement demand, but does not make any allegations that Admiral did not keep it apprised of "settlement negotiations." As discussed *supra*, Wegman makes no allegation of settlement negotiations in its complaint. However, even if the demand can be considered "settlement negotiation," an offer so far above the $1,000,000.00 policy limit does not cause the conflict of interest that arises when a settlement offer falls within the policy limits. Without such a conflict, the duty to communicate the status of settlement negotiations is not implicated under *Parmelee*.

## V. CONCLUSION

For the foregoing reasons, Defendant Admiral's motion to dismiss Plaintiff's complaint is granted.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: March 20, 2009